United States District Court
Southern District of Texas
**ENTERED**
April 04, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 4:22-CR-369 |
| | § | |
| QUINCY PALMER | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Quincy Palmer's Motion to Suppress Evidence. (Dkt. 17). Palmer, who is charged with possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), seeks to suppress (1) evidence seized during the March 2022 traffic stop that led to his arrest ("the traffic stop"), and (2) statements he made to the arresting officers and to his friends during the traffic stop. The Government filed a Response to the Motion to Suppress. (Dkt. 19). The Court conducted a suppression hearing on January 19, 2023. After considering the motion, response, reply, evidence, and applicable law, the Court finds that Palmer's motion should be **DENIED**.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

Officer Kenneth Bradshaw of the Houston Police Department (HPD) testified at the suppression hearing. Evidence admitted at the hearing also included body camera

footage from police officers at the scene of the traffic stop that led to Palmer's arrest. The Court concludes that (1) there is no considerable dispute between the parties concerning the factual background to this action, and (2) the Government provided credible evidence supporting the factual record as described in the Government's Response to the Motion to Suppress Evidence. Accordingly, the Court finds that the following facts have been established by the credible evidence.

On March 15, 2022, HPD Officers Bradshaw and W. Moseley ("the officers") observed Palmer driving a 2017 Buick Lacrosse near the 5700 block of Scott Street in Houston, Texas. The front and side windows of Palmer's vehicle appeared to be tinted, the back license plate was obstructed by a plush doll hanging over the spare tire, and the wheel rims appeared to protrude wider than what is allowed under the Texas Transportation Code. The officers initiated a traffic stop.

Officer Bradshaw approached the driver's side of the vehicle; Officer Moseley approached the passenger's side. Upon approaching the vehicle, the officers smelled burnt marijuana. Officer Bradshaw obtained Palmer's license and insurance, then both officers returned to their patrol car to run Palmer's information. Before the results came back, they confirmed the marijuana smell with one another and decided to obtain more information from Palmer about the smell and issue a citation for the tinted windows.

The officers re-approached Palmer's vehicle. Officer Bradshaw told Palmer that he smelled marijuana and asked him how much marijuana was in the vehicle. Palmer admitted to having marijuana in a backpack in the back seat. At that point, Officer

Bradshaw asked Palmer to exit the vehicle and proceeded to handcuff him. While Officer Bradshaw was handcuffing Palmer, Officer Moseley asked Palmer "[i]t ain't nothing else but weed, right?" Palmer responded that he had an "AR" (assault rifle) in the back seat. Officer Mosely asked if Palmer was a convicted felon; Palmer said that he was.

Upon inspecting the vehicle, Officer Mosely found Palmer's AR-15 rifle and several bags of marijuana. Palmer was placed in the back of the officers' patrol car and given the opportunity to call someone to drive his vehicle home. Palmer had three brief conversations on speakerphone and ultimately arranged for his brother to drive the vehicle home.

Palmer has now filed the pending motion to suppress the Government's use at trial of the firearm recovered at the scene and Palmer's statements at the scene. He asserts that the traffic stop violated his rights under the Fourth Amendment of the United States Constitution and therefore the firearm collected by officers should be suppressed in this prosecution. Palmer further argues that his statements at the scene should also be suppressed because he was not given his *Miranda* rights before he answered the officers' questions. For the reasons discussed below, the Court disagrees with these arguments and the motion to suppress is **DENIED**.

## II.     APPLICABLE LAW

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV. "Because the Fourth Amendment itself contains no enforcement mechanism, the exclusionary rule developed as a judicially-created remedy to safeguard Fourth Amendment rights." *United States v. Edmond*, No. 18-cr-00091-01, 2018 WL 4178228, at *3 (W.D. La. Aug. 6, 2018) (citing *Davis v. United States*, 564 U.S. 229, 236 (2011)). "In general, the exclusionary rule prohibits the introduction of evidence at trial that is derivative of an unconstitutional search or seizure and thereby deters police misconduct." *Id*. (citing *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005)). "Under the fruit of the poisonous tree doctrine, all evidence derived from an illegal search or seizure must be suppressed unless the government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the Fourth Amendment violation." *Id*. (citing *United States v. Jones*, 234 F.3d 234, 243–44 (5th Cir. 2000)).

"Generally, on a motion to suppress, the defendant has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of [his] constitutional rights." *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001). Warrantless searches are presumptively unreasonable under the Fourth Amendment; the Government bears the burden of establishing by a preponderance of the evidence that the search or seizure was constitutional. *Edmond*, 2018 WL 4178228, at *4 (citing *United States v. Lage*, 183 F.3d 374, 380 (5th Cir. 1999); *United States v.*

*Berick*, 710 F.2d 1035, 1037 (5th Cir. 1983); *United States v. McKinnon*, 681 F.3d 203, 207 (5th Cir. 2012)).

Traffic stops are deemed seizures for the purposes of the Fourth Amendment. *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). The legality of a traffic stop is analyzed under the framework articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). *See id*. at 30. Under *Terry*, courts take a two-pronged approach and "ask whether the officer's action was (1) justified at its inception; and (2) reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* (citing *Terry*, 392 U.S. at 19–20) (internal quotation marks omitted). Under the first prong of a *Terry* analysis, for a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion—before stopping the vehicle—that some sort of illegal activity, such as a traffic violation, has occurred or is about to occur. *See United States v. Breeland*, 53 F.3d 100, 102 (5th Cir. 1995).

### III.    ANALYSIS

**A. The officers had an objectively reasonable basis for the traffic stop.**

Palmer argues that the evidence obtained from the traffic stop should be suppressed because the officers lacked reasonable suspicion of illegal activity—*i.e.*, because the stop failed the first prong of the *Terry* analysis. The Court disagrees. The testimony of Officer Bradshaw and the evidence presented during the suppression hearing established that the officers had probable cause to believe that Palmer had

violated Texas motor vehicle laws. Specifically, the officers observed that Palmer's vehicle had a tinted front windshield in violation of Texas Transportation Code Section 547.613(b)(1). This offense alone provided enough reasonable suspicion of illegal activity for officers to lawfully initiate the traffic stop.[1]

During the suppression hearing, Palmer's counsel presented two arguments that the officers lacked reasonable suspicion for the traffic stop: (1) that the officers could not ascertain that the windows in Palmer's vehicle were tinted at the time of the traffic stop, assuming Palmer's windows were tinted at all; and (2) that tinted windows cannot provide reasonable suspicion for a traffic stop under Fifth Circuit law. The Court disagrees.

As an initial matter, the evidence presented during the suppression hearing—bodycam videos from both officers and photographs taken at the scene of the traffic stop—clearly demonstrated that Palmer's front windshield was tinted. The evidence further demonstrated that there was enough light for the officers to be able to see that Palmer's front windshield was tinted.[2] Because the officers observed a violation of

---

[1] Although the officers observed other traffic violations, such as illegally wide wheel rims in violation of Texas Transportation Code Section 621.201(b), side windows that appeared to allow less than 25% light transmission in violation of Transportation Code Section 547.613(a) and (b)(2), and an obstructed rear license plate in violation of Transportation Code Section 504.945(a)(7), only two violations were listed in Palmer's arrest report: "a tinted front windshield, and no front license plate." (Dkt 28 at 8). The photographs and bodycam footage taken at the traffic shop reveal that Palmer had a front license plate, and Officer Bradshaw acknowledged his error during his testimony.

[2] The traffic stop was initiated at 7:03 on March 15, 2022. The sun set at 7:30 on that date. Furthermore, the photographs and bodycam footage of the traffic stop demonstrated that there was enough light for the officers to be able to observe a tinted windshield.

Texas Transportation Code Section 547.613(b)(1), they had reasonable suspicion of illegal activity to justify the traffic stop.

Palmer's counsel made much of a photograph of the vehicle, taken a month after the traffic stop, in which the front windshield appeared to be more translucent than it appeared during the traffic stop. But that photograph does not provide any basis for finding that Palmer's front windshield was not unlawfully tinted at the time of the traffic stop. The tint could have been removed in the interim. The photograph of the vehicle taken a month after the traffic stop does not alter the evidence of the windshield being tinted at the time of the traffic stop.

Palmer's counsel further argued at the suppression hearing that, even if the Court found that Palmer's windows were illegally tinted, such a finding nevertheless cannot provide reasonable suspicion of illegal activity to justify a traffic stop under Fifth Circuit law. But the case counsel cited by Palmer's counsel, *United States v. Guerrero-Barajas*, does not support that argument. 240 F.3d 428 (2001).

In *Guerrero-Barajas*, the Fifth Circuit upheld a finding of reasonable suspicion of illegal activity when Border Patrol agents pulled over a low-riding Sedan five miles north of the border with Mexico in the middle of the night. *Id.* at 433. The agents reported that they could not see into the vehicle due to the windows' heavy tint, but did not assert that the windows were <u>illegally</u> tinted. *Id.* at 431. Thus, the court's holding that "tinted or heavily tinted windows alone do not rise to the level of reasonable suspicion," *id.* at 433, must be read in the context of the case in which it was issued.

Indeed, when presented with the same argument Palmer makes here, the Fifth Circuit has held that "[t]here is no merit to [the] argument that Fifth Circuit precedent precludes an officer from using suspicion of <u>illegal</u> window tint as a basis for reasonable suspicion or probable cause for a traffic stop." *United States v. Stevenson,* 97 F. App'x 468, 469 (5th Cir. 2004) (emphasis added).

The traffic stop was justified in light of the officers' reasonable suspicion of illegal activity. Thus, Palmer's motion to suppress the evidence obtained during the traffic stop is DENIED.

### B. The officers did not violate Palmer's *Miranda* rights during the traffic stop.

Palmer also argues that his statements during the stop should be suppressed on the grounds that the officers questioned him without informing him of his *Miranda* rights. Palmer seeks to exclude statements he made directly to the arresting officers and statements the officers overheard when Palmer made a few phone calls in an effort to find someone to drive his car home. In light of the evidence presented at the hearing, the Court disagrees.

In general, "the prosecution may not use statements . . . stemming from custodial interrogation of the defendant" unless the defendant has first been given *Miranda* warnings. *United States v. Miranda*, 384 U.S. 436, 444–45 (1966). However, "a Fourth Amendment seizure does not necessarily render a person in custody for purposes of *Miranda*. For example, traffic stops—stops which constitute a Fourth Amendment

seizure—do not automatically place a person in custody for purposes of *Miranda*." *United States v. Bengivenga,* 845 F.2d 593, 598 (5th Cir. 1988). As the Fifth Circuit has made clear, "[o]fficers possessing reasonable articulable suspicion of a person's participation in criminal activity may seize the suspect in accord with the Fourth Amendment to conduct an investigative stop—a narrow intrusion involving limited detention accompanied by brief questioning and, if justified, a frisk for weapons." *Id*. at 599.

When a court assesses whether a suspect is in custody as contemplated by *Miranda*, "[t]he requisite restraint on freedom is greater than that required in the Fourth Amendment seizure context." *United States v. Wright*, 777 F.3d 769, 774 (5th Cir. 2015) (citation omitted). A custodial determination in the *Miranda* context involves "an objective determination, depending on the totality of the circumstances, that looks to the circumstances surrounding the interrogation and whether, given the circumstances, a reasonable person would have felt he was at liberty to terminate the interrogation and leave." *United States v. Nelson*, 990 F.3d 947, 955 (5th Cir. 2021) (citing *Wright*, 777 F.3d at 774). In other words, the court must consider whether "a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Bengivenga*, 845 F.2d at 596. "The reasonable person through whom [the court] view[s] the situation must be neutral to the environment and to the purposes of the investigation—that is, neither guilty of criminal conduct and thus overly apprehensive

nor insensitive to the seriousness of the circumstances." *Id.* Neither the officer's nor the suspect's subjective intent "is relevant to the custody determination." *United States v. Chavira*, 614 F.3d 127, 133 (5th Cir. 2010) (citing *Bengivenga*, 845 F.2d at 597).

Because no single fact or circumstance results in *Miranda* custody, the Fifth Circuit has repeatedly considered "certain key details" encapsulated by the following factors:

- *First*, the length of the questioning;
- *Second*, the location of the questioning;
- *Third*, the accusatory, or non-accusatory, nature of the questioning;
- *Fourth*, the amount of restraint on the individual's physical movement; and
- *Fifth*, statements made by officers regarding the individual's freedom to move or leave.

*Wright*, 777 F.3d at 775 (citations omitted).

The brief handcuffing of a suspect does not render an interview custodial *per se* under *Miranda*. *United States v. Michalik*, 5 F.4th 583, 589 n.3 (5th Cir. 2021) (citing *United States v. Ortiz*, 781 F.3d 221, 231–33 (5th Cir. 2015)). And the Supreme Court generally recognizes that "[n]ot all restraints on freedom of movement amount to custody for purposes of *Miranda*." *Howes v. Fields*, 565 U.S. 499, 509 (2012). Indeed, "[s]ome *significant* restraint of freedom of movement must have occurred." *United States v. Howard*, 991 F.2d 195, 200 (5th Cir. 1993) (citation omitted). After reviewing the video of the encounter and the testimony presented at the hearing, the Court finds

that the officers did not restrain Palmer's freedom of movement to "the degree which the law associates with formal arrest." *Bengivenga*, 845 F.2d at 596.

Assuming *arguendo* that a reasonable person in Palmer's position would have equated the encounter with formal arrest, the Court must next determine whether the environment in which Palmer was questioned presented the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *See Howes,* 565 U.S. at 509. The Court finds that that under the circumstances at issue, the environment of the traffic stop did not present the same inherently coercive pressures as the station house questioning at issue in *Miranda*. Thus, although Officer Moseley asked Palmer "it ain't nothing else [in the vehicle] but weed, right," while Officer Bradshaw was handcuffing him, the handcuffing of Palmer did not place him in *Miranda* custody.

In *United States v. Coulter*, the Fifth Circuit recently examined a similar set of circumstances: whether statements regarding an illegal gun in a vehicle, made while a suspect was handcuffed, amounted to a *Miranda* violation. 41 F.4th 451 (5th Cir. 2022). In overturning a district court's granting of a motion to suppress evidence, the Fifth Circuit held that "a reasonable person in [the defendant's] position would not have equated the restraint on his freedom of movement with formal arrest." *Id.* at 463. Under these circumstances the officers were not required to provide Palmer with a *Miranda* warning before inquiring whether his vehicle contained anything other than marijuana.

Palmer additionally seeks to suppress statements he made to friends and relatives when attempting to find someone to drive his vehicle home. But those statements were

not made to the officers, they were merely overheard by the officers. Nor were the statements made in response to questions from the officers; instead, Palmer was telling his friends and relatives why he was going to jail. Palmer's statements to his friends were not a response to interrogation and did not require prior *Miranda* warning.

The officers did not violate Palmer's *Miranda* rights during the traffic stop. Thus, Palmer's motion to suppress the statements he made during the traffic stop is DENIED.

## CONCLUSION

For the reasons stated above, the Court finds that the officers had sufficient reasonable suspicion of illegal activity to conduct the traffic stop and that the officers did not violate Palmer's *Miranda* rights during the stop. Accordingly, the Motion to Suppress Evidence (Dkt. 17) is **DENIED**.

SIGNED this 4th day of April, 2023 at Houston, Texas.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE